# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

SABAL TRAIL TRANSMISSION, LLC,

       *Plaintiff,*

v.                        **Case No. 1:16-cv-063-MW-GRJ**

REAL ESTATE, ET AL.

       *Defendants.*

_____/

## ORDER DENYING PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT[1]

"[T]he dichotomy between personal liberties and property rights is a false one. Property does not have rights. People have rights[, such as t]he right to enjoy property without unlawful deprivation . . . . That rights in property are basic civil rights has long been recognized." *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552 (1972) (citations omitted). Those basic civil rights also dictate that private property owners must be compensated when their property is taken for public use.

---

[1] This order has been amended solely to correct a scrivener's error. "Of corrections" was removed from the case's caption.

This case presents a related, straightforward choice-of-law question. What substantive law controls the amount of compensation due to a private landowner for the taking of his or her property by a private entity exercising federal eminent-domain authority—federal or state law? If federal law controls, Defendants are not entitled to litigation expenses. But if state law controls, they are.

Because Eleventh Circuit precedent—and the overwhelming weight of authority—teaches that state substantive law controls, Plaintiff's Motion for Partial Summary Judgment, ECF No. 69, is **DENIED**.

I

Sabal Trail Transmission, LLC ("Plaintiff") proposes to construct 516.2 miles of mainline pipeline in Alabama, Georgia, and Florida, known as the Sabal Trail Project ("Project"). ECF No. 1, at 3–4. Plaintiff also proposes associated lateral pipelines in Florida, five new compressor stations, and a hub in Central Florida. *Id*. at 4. The Project will supply natural gas to Florida Power & Light Company and Duke Energy Florida, LLC, for their power-generation needs. *Id*. at 3–4.

The Federal Energy Regulatory Commission ("FERC") issued Plaintiff a Certificate of Public Convenience and Necessity ("FERC Certificate") for the Project. *Id.* at 3. As holder of that FERC Certificate, § 717f(h) of the Natural Gas Act authorizes Plaintiff to "exercise . . . the right of eminent domain" and bring a condemnation action against private property owners for any property needed to construct, operate, or maintain a pipeline or associated facilities. 15 U.S.C. § 717f(h) (2012).

Plaintiff initiated an eminent-domain condemnation action against multiple private property owners ("Defendants"). ECF No. 1. Plaintiff then filed a Motion for Partial Summary Judgment, asserting that the Fifth Amendment to the United States Constitution's "just compensation" measure—which does not include the property owner's litigation expenses in an eminent-domain condemnation action—governs. ECF No. 69, at 1; *see also United States v. Bodcaw Co.*, 440 U.S. 202, 203 (1979) ("Thus, '[a]ttorneys' fees and expenses are not embraced within just compensation . . . .'" (quoting *Dohany v. Rogers*, 281 U.S. 362, 368 (1930))). Defendants disagree, and argue that the Florida Constitution's "full compensation" measure—which includes reasonable attorney's fees and expenses—governs. ECF No. 81, at 1–2; *see*

*also* Fla. Const. art. X, § 6(a) ("No private property shall be taken except for a public purpose and with *full compensation* therefor paid to each owner . . . ." (emphasis added)); *Joseph B. Doerr Trust v. Cent. Fla. Expressway Auth.*, 177 So. 3d 1209, 1215 (Fla. 2015) (holding that it is "fundamentally clear" that the definition of full compensation under Florida's Constitution includes reasonable attorney's fees (citations omitted)).

## II

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree to all material facts; thus, the only disputes relate to questions of law. "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Bruley v. Vill. Green Mgmt. Co.*, 592 F. Supp. 2d 1381, 1388 (M.D. Fla. 2008) (quoting *Uhl v. Swanstrom*, 79 F.3d 751, 754 (8th Cir. 1996)).

## III

Plaintiff contends that the Fifth Amendment's "just compensation" measure controls because federal law supplies the ex-

clusive measure of compensation in Natural Gas Act condemnation proceedings. This Court disagrees.

A

Federal law governs questions involving the rights and liabilities under the Natural Gas Act. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726 (1979) ("[F]ederal law governs questions involving the rights of the United States arising under nationwide federal programs."). But that does not mean that federal law necessarily applies. *See id.* at 727–28 ("Controversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules." (citations omitted)). "Instead, 'whether to adopt state law or to fashion a national federal rule is a matter of judicial policy dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'" *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1500 (11th Cir. 1996) (quoting *Kimbell Foods*, 440 U.S. at 728).

In that scenario, courts must first start "with the premise

that state law should supply the federal rule unless there is an expression of legislative intent to the contrary, or, failing that, a showing that state law conflicts significantly with any federal interests or policies . . . ." *Ga. Power Co. v. Sanders*, 617 F.2d 1112, 1116 (5th Cir. 1980)[2] (citing *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68 (1966)). When deciding whether there is a "significant conflict" between a federal policy or interest and the application of state law, *id.* at 1117 (quoting *Wallis*, 384 U.S. at 68), courts consider the following factors: "(1) the need for a nationally uniform body of law, (2) whether the application of state law would frustrate specific objectives of the federal program at issue, and (3) the extent to which application of a federal rule would upset commercial relationships predicated on state law." *Columbia Gas Transmission Corp. v. Exclusive Nat. Gas Storage Easement*, 962 F.2d 1192, 1195–96 (6th Cir. 1992) (citing *Kimbell Foods*, 440 U.S. at 728–29).

---

[2] Decisions of the Fifth Circuit prior to October 1, 1981, are binding within the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

B

This Court's analysis begins with the language of the Natural Gas Act. *See id.* at 1197 (beginning a similar case "with the statutory language"). Section 717f(h) states that "[t]he practice and procedure in any action or proceeding for [condemnation under § 717f(h)] shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated . . . ."[3] 15 U.S.C. § 717f(h).

That language is largely unhelpful and arguably irrelevant. Both parties agree that "the practices and procedures of federal eminent domain actions, including those filed pursuant to the Natural Gas Act, 15 U.S.C § 717f(h), are governed by Rule [71.1][4] and not by state [procedural] law." *S. Nat. Gas Co. v. Land, Cullman Cty.*, 197 F.3d 1368, 1375 (11th Cir. 1999); *see also* ECF No. 69, at 12; ECF No. 81, at 21. That is because Rule 71.1 supersedes the Natural Gas Act's practice and procedure clause. *Cullman Cty.*, 197 F.3d at 1375.

---

[3] This Court will refer to this language as the "practice and procedure clause."

[4] Former Rule 71A of the Federal Rules of Civil Procedure was redesignated as Rule 71.1 in 2007. *See* Fed. R. Civ. P. 71.1 advisory committee's note.

Looking then to Rule 71.1, which governs "proceedings to condemn real and personal property by eminent domain," subsection (l) states that "[c]osts are not subject to Rule 54(d)." Fed. R. Civ. P. 71.1. Plaintiff fervently argues that this rule "expressly provides that costs are *not* recoverable by prevailing parties in such actions . . . ." ECF No. 69, at 17 (emphasis in original). But that is not so. Rule 71.1(l) simply states that the proceedings it governs are *not subject to* any provisions for costs set forth in Rule 54(d). It does *not* mean that "costs are not recoverable" in all eminent-domain condemnation actions.

Because the rule itself does not provide an answer, this Court looks to the Advisory Committee Notes for guidance. Fed. R. Civ. P. 71.1(l) advisory committee's note. Those explain that the rule does not "attempt[] to state what the rule on costs is." *Id*. The Advisory Committee Notes also explain *why* Rule 71.1 excludes eminent-domain condemnation actions from the normal award of costs. Rule 71.1(l) is not meant to punish private property owners in eminent-domain condemnation cases by stripping them of costs; rather, it is meant to *protect* them. *See id.* (explaining that costs are exempted in condemnation actions because the

condemnor (typically, the government) will usually be the prevailing party, and granting it fees would further reduce the compensation award). In any event, all that can be gleaned from Rule 71.1(l)—and, more broadly, Rule 71.1 generally—is that this Court is not bound by Rule 54(d).

## C

Neither the Natural Gas Act nor Rule 71.1 resolve the issue presented here. But, luckily, this Court does not write on a clean slate. In *Georgia Power*, the Eleventh Circuit's predecessor court addressed whether compensation issues in Federal Power Act condemnation cases "should be determined under federal law or under the law of the state where the condemned property is located when a licensee of the [FERC] exercises the power of eminent domain in federal court . . . ." 617 F.2d at 1113. Although the court acknowledged that the choice-of-law issue was a close one, it nonetheless held that "the law of the state where the condemned property is located is to be adopted as the appropriate federal rule for determining the measure of compensation when a licensee [of the FERC] exercises the power of eminent domain pursuant to . . . the Federal Power Act." *Id.* at 1124.

The *Georgia Power* court did not reach that conclusion willy nilly; rather, it painstakingly considered whether there was a "significant conflict" between the "important federal interests . . . arising under the Federal Power Act" and the application of state law. *Id.* at 1117–18 (quoting *Wallis*, 384 U.S. at 68). It decided that there was not. *See id.* at 1118 ("[T]he interests of the United States in the determination of the amount of compensation a private licensee must pay a landowner in a condemnation proceeding under Section 21 are not sufficient to warrant displacement of state law on that issue.").

In reaching that conclusion, the court first emphasized that the project at issue was undertaken by a private party—not the government. *Id.* It therefore did not significantly "implicate the interests of the United States . . . ." *Id.* Moreover, because FERC licensees have the option to proceed in either state or federal court, the court reasoned that incorporating state law would not further upset the important interest in national uniformity. *See id.* at 1122 (noting that even the "application of uniform federal law . . . could result in a corresponding loss of uniformity even in a single project"). In fact, the court highlighted "the state's interest in avoiding displacement of its laws in the area of property

rights, traditionally an area of local concern." *Id.* at 1123. And while the court acknowledged that applying state law would arguably lead the condemner to pay higher costs to the property owner, that speculative possibility did not "amount[] to the kind of conflict which [would] preclude[] adoption of state law." *Id.* at 1121 (citation omitted).

That reasoning applies equally here. The Natural Gas Act makes its guiding light explicit: to further the public interest "in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce . . . ." 15 U.S.C. § 717(a). Adopting state law as the measure of compensation will not significantly conflict with that goal; it simply means that Natural Gas Act condemners may have to pay more than would be required under a federal rule. But that pea-sized conflict—if a conflict at all—is not enough to "preclude[] adoption of state law as the federal rule." *Ga. Power*, 617 F.2d at 1121 (citing *United States v. Little Lake Misere Land Co., Inc.*, 412 U.S. 580 (1973)). In any event, "property rights have traditionally been, and to a large degree are still, defined in substantial part by state law." *Columbia Gas*, 962 F.2d at 1198 (citation omitted). Even adopting

federal law could therefore upset the parties' commercial expectations, which are likely founded upon state law.

Similarly, there is no need for a uniform federal rule. For uniformity concerns to dictate the adoption of a federal rule, the need must be "plain," *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367 (1943), and "generalized pleas for uniformity [may not function] as substitutes for concrete evidence" that application of state law would adversely affect administration of the federal statute, *Kimbell Foods*, 440 U.S. at 730. But here, the necessity of a federal rule is conspicuously absent. Simply put, nothing in the Natural Gas Act "evidences a distinct need for nationwide legal standards." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991) (citing *Clearfield Trust*, 318 U.S. at 366–67). And even if a federal rule *was* adopted, that would do nothing to address the corresponding lack of uniformity stemming from the fact that Natural Gas Act condemnation proceedings may be brought in federal *or* state court. *See* § 361.05, Fla. Stat. (2016) (granting entities that are "subject to regulation under the federal Natural Gas Act . . . the right of eminent domain"). Indeed, applying federal law "could result in a corresponding loss of uniformity even in a single project." *Ga. Power*, 617 F.2d 1122.

Plaintiff tries to distinguish *Georgia Power* by stating that it addressed the Federal Power Act—not the Natural Gas Act. ECF No. 69, at 22. That argument is unconvincing. A brief glance at the statutes' condemnation provisions reveals that they are near carbon-copies of one another. *See* 15 U.S.C. § 717f(h); 16 U.S.C. § 814. There is more. The Natural Gas Act's legislative history also suggests that it "was intended to mirror the parallel provision of the Federal Power Act." *Columbia Gas*, 962 F.2d at 1199 (citing H.R. Rep. No. 695, 80th Cong., 1st Sess., *reprinted in* 1947 U.S.C.C.A.N. 1477, 1477). This Court therefore "can conceive of no logical reason for the practice and procedure language of these two statutes"—or cases analyzing that language—"to be given two different meanings." *Cullman Cty.*, 197 F.3d at 1375.

Many circuit courts have reached the same conclusion; namely, that *Georgia Power* (or at least its reasoning) applies to Natural Gas Act cases.[5] Take *Columbia Gas*, for example. There,

---

[5] Plaintiff tries to convince this Court otherwise by stating that the Second Circuit has limited *Georgia Power*'s reasoning "only to Power Act cases, and to hold that its analytical framework would look to federal law for a uniform rule in other takings contexts." ECF No. 69, at 31. That is, at best, disingenuous. Neither of the cases cited by Plaintiff limits *Georgia Power*'s reasoning to Federal Power Act cases. Nor do they even mention the Natural Gas Act. Rather, both cases cite *Georgia Power* with approval. *See Nat'l R.R. Passenger Corp. v. Two Parcels of Land*, 822 F.2d 1261, 1265 (2d Cir. 1987) (agreeing "that the *Georgia Power* analysis is sound" but concluding that, as

the Sixth Circuit relied on *Georgia Power* to hold that the Natural Gas Act "incorporates the law of the state in which the condemned property is located in determining the amount of compensation due." 962 F.2d at 1199. That holding was recently reaffirmed. *See Rockies Express Pipeline LLC v. 4.895 Acres of Land*, 734 F.3d 424, 429 (6th Cir. 2013) ("While condemnation under the Natural Gas Act is a federal matter, courts conducting such proceedings must apply 'the law of the state in which the condemned property is located in determining the amount of compensation due.'" (quoting *Columbia Gas*, 962 F.2d. at 1199)). And the Sixth Circuit is not an outlier; the Fifth and Tenth Circuits agree. *See Bison Pipeline, LLC v. 102.84 Acres of Land*, 560 F. App'x 690, 695–96 (10th Cir. 2013) (declining to hold a new trial applying federal common law in a Natural Gas Act condemnation proceeding because state law governed the compensation measure); *Miss. River Transmission Corp. v. Tabor*, 757 F.2d 662,[6] 665

---

applied to the specific facts of that case, "it points to a different result"); *Winooski Hydroelectric Co. v. Five Acres of Land*, 769 F.2d 79, 81–82 (2d Cir. 1985) ("Preliminarily, we agree with the Fifth Circuit that in a condemnation action under [the Federal Power Act] the substantive law applied is federal law . . . but the source of the federal law is the law of the state in which the property is located." (citing *Ga. Power*, 617 F.2d at 1115)).

[6] This Court acknowledges that *Tabor* involved a condemnation effectuated under both state and federal law. It nonetheless finds it persuasive.

n.3 (5th Cir. 1985) (applying Louisiana law as the measure of compensation in a Natural Gas Act condemnation proceeding).

The same is true for the overwhelming majority[7] of district courts.[8] *Rockies Express Pipeline, LLC v. 77.620 Acres*, No. 08-cv-3127, 2010 WL 3034879 (C.D. Ill. Aug. 3, 2010)—a Natural Gas Act condemnation case—is instructive. There, the court first acknowledged that no Seventh Circuit precedent definitively

---

[7] This Court is unpersuaded by *Columbia Gas Transmission, LLC v. 252.071 Acres, More or Less, in Baltimore Cty., Md.*, No. ELH-15-3462, 2016 WL 7167979 (D. Md. Dec. 8, 2016), and *Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, No. 3:cv-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014). Both of those cases erroneously rely on *United States v. Miller*, 317 U.S. 369 (1943), which this Court finds distinguishable. *See infra* pp. 17–18.

[8] *Columbia Gas Transmission, LLC v. Booth*, 1:16-cv-1418, 2016 WL 7439348, at *5 (N.D. Ohio Dec. 22, 2016) (citing *Columbia Gas*); *N. Nat. Gas Co. v. Approximately 9117 Acres in Pratt, Kingman*, 2 F. Supp. 3d 1174, 1179 (D. Kan. 2014) (citing *Columbia Gas*); *Cadeville Gas Storage, LLC v. 10.00 Acres of Land In Ouachita Par., La.*, No. 12-2910, 2013 WL 6712918, at *9 (W.D. La. Dec. 20, 2013) (citing *Tabor*); *Tex. Gas Transmission, LLC v. 18.08 Acres +/- in Se. Quarter Section 24, Tp. 30, N., Range 4 W., Coahoma Cty., Miss.*, 2:08-cv-240, 2012 WL 6057991, at *5 (N.D. Miss. Dec. 6, 2012) (citing *Ga. Power*); *Perryville Gas Storage, LLC v. Dawson Farms, LLC*, No. 11-1883, 2012 WL 5499892, at *7 (W.D. La. Nov. 13, 2012) (citing *Tabor*); *Columbia Gas Transmission, LLC v. Crawford*, 746 F. Supp. 2d 905, 910 (N.D. Ohio 2010) (citing *Columbia Gas*); *Maritimes & Ne. Pipeline, LLC. v. 0.714 Acres of Land, More or Less, in Danvers, Mass.*, No. 02-11054, 2007 WL 2461054, at *2 (D. Mass. Aug. 27, 2007) (citing *Portland Nat. Gas* and *Algonquin Gas*); *Portland Nat. Gas Transmission Sys. v. 19.2 Acres of Land*, 195 F. Supp. 2d 314, 319–20 (D. Mass. 2002) (citing *Ga. Power, Algonquin Gas*, and *Tenn. Gas*); *Spears v. Williams Nat. Gas Co.*, 932 F. Supp. 259, 260–61 (D. Kan. 1996) (citing *Columbia Gas* and *Ga. Power*); *Algonquin Gas Transmission Co. v. 60 Acres of Land, More or Less, in Brockton, Plymouth Cty., Mass.*, 855 F. Supp. 449, 453 (D. Mass. 1994) (citing *Columbia Gas* and *Tenn. Gas*); *Tenn. Gas Pipeline Co. v. 104 Acres of Land More or Less, in Providence Cty. of State of R.I.*, 780 F. Supp. 82, 85 (D.R.I. 1991) (citing *Tabor*).

stated "whether federal or state substantive [compensation] law should apply." *Id.* at *2. Nonetheless, after considering the parties' arguments, the court concluded that

> the arguments supporting the application of state law [are] more persuasive. In general, property rights are defined by state law. Furthermore, the Court does not see an overriding need for national uniformity on *substantive* property law when dealing with a FERC licensee. The uniform procedure under [Rule] 71.1 provides sufficient predictability.

*Id* (emphasis in original). Other courts within the Eleventh Circuit's jurisdiction agree. *Fla. Gas Transmission Co. v. An Approximately 9.854 Acre Nat. Gas Transmission Pipeline Easement*, 96-14083-CIV, 1999 WL 33487958, at *1 (S.D. Fla. May 27, 1999)[9] (reasoning in a Natural Gas Act condemnation proceeding "that Florida substantive law will control the actual determination of compensation").

Under *Georgia Power*, state substantive law governs the compensation measure in eminent-domain condemnation pro-

---

[9] The same court later awarded costs and reasonable attorney's fees in the case. *Fla. Gas Transmission Co. v. An Approximately 9.854 Acre Nat. Gas Transmission Pipeline Easement*, 96-14083-CIV, 2000 WL 33712491, at *3 (S.D. Fla. Aug. 25, 2000).

ceedings brought by private parties against private property owners. 617 F.2d at 1124. That reasoning applies equally to condemnation proceedings brought under the Natural Gas Act. Florida's full compensation measure therefore governs here.

IV

Plaintiff makes a boatload of arguments to the contrary, but none of them hold water. Below is just a sample.

At the heart of Plaintiff's argument is the misguided belief that *United States v. Miller*, 317 U.S. 369 (1943) controls. That case involved a condemnation proceeding brought by the federal government in California. *Id.* at 370. The *Miller* Court held that the Fifth Amendment constitutional measure of just compensation applied to the condemnation in question. *See id.* at 379–80 (holding that a federal court does not apply "the law of the State in which the court sits" to "questions of substantive right—such as the measure of compensation").

Yet *Georgia Power* expressly considered and distinguished *Miller*. 617 F.2d at 1115 n.4. In *Miller*,[10] the federal government—not a private party—was the condemner. 317 U.S. at 370.

---

[10] Plaintiff contends that "*Miller* is strikingly similar to this case." ECF No. 69, at 10. But that simply is not true. In fact, a deep-dive into *Miller*

But Natural Gas Act condemnation proceedings are brought by private parties against private landowners. And, in those scenarios, "the interests of the United States in the determination of the amount of compensation a private licensee must pay a landowner in a condemnation proceeding . . . are not sufficient to warrant displacement of state law on that issue." *Ga. Power*, 617 F.2d at 1118. *Miller* is therefore inapposite. *See id.* at 1119–20 & n.9 (explaining that decisions like *Miller*, "where the United States is the party condemning and paying for the land," do not control in Federal Power Act cases).

*Kohl v. United States*, 91 U.S. 367 (1875), does not dictate otherwise. In *Kohl*, the Supreme Court stated that eminent-domain "power is not changed by its transfer to another holder." *Id.* at 372. That does not mean, as asserted by Plaintiff, that *Miller*

---

reveals glaring inconsistencies in Plaintiff's argument. The eminent-domain power in *Miller* allowed the federal government "to purchase or condemn . . . suitable land for relocation of [transportation facilities and utilities]" as necessary to accommodate the project at issue in that case. *Miller v. United States*, 125 F.2d 75, 76 n.1 (9th Cir. 1942). That is far from "strikingly similar to" the Natural Gas Act. Plaintiff nonetheless insists that it is, and simultaneously claims that this case is nothing like those cases addressing the Federal Power Act. *See* ECF No. 69, at 22–32 (attempting to distinguish *Ga. Power* and *Columbia Gas*). But Plaintiff cannot have its cake and eat it too. Saying that *Miller* is "strikingly similar" to this case—while also asserting that the Natural Gas Act is nothing like the Federal Power Act—is like saying men's soccer is "strikingly similar" to bobsledding, yet not women's soccer.

applies when "a private entity, rather than a governmental entity, exercises federal eminent-domain authority . . . ." ECF No. 69, at 11. Rather, in context, it stands for the simple proposition that eminent-domain power is held by both the federal *and* state governments. *Kohl*, 91 U.S. at 372 ("But, if the right of eminent domain exists in the Federal government, it is a right which may be exercised within the States, so far as is necessary to the enjoyment of the powers conferred upon it by the Constitution."). Plaintiff's attempt to fit a square peg into a round hole is futile.

At bottom, Plaintiff's argument fails to grasp the distinction between procedural and substantive law and the source of those laws. It is undisputed that federal procedural law—Rule 71.1—applies to Natural Gas Act condemnation actions. *Cullman Cty.*, 197 F.3d at 1375; *see also* ECF No. 81, at 21 (agreeing that "federal procedural law applies to condemnation actions under the [Natural Gas Act]"). But that rule does not decide the issue presented here. Likewise, it is evident that "the substantive law applied is federal law." *Winooski Hydroelectric Co. v. Five Acres of Land*, 769 F.2d 79, 81 (2d Cir. 1985) (citing *Ga. Power*, 617 F.2d at 1115); *see Columbia Gas*, 962 F.2d at 1199 (concluding that "condemnation under the Natural Gas Act is a matter of federal

law"). The question is what law supplies the applicable rule for determining the amount of compensation. *See Ga. Power*, 617 F.2d at 1116 (considering what "law should supply the federal rule"); *see also Redwing Carriers*, 94 F.3d at 1500 (asking "[w]hether to adopt state law or to fashion a national federal rule" (quoting *Kimbell Foods*, 440 U.S. at 728)). The answer is the substantive law of the state.

Because state substantive law governs the compensation measure in eminent-domain condemnation proceedings brought by private parties against private property owners, Florida's "full compensation" measure governs here.

## V

Under Rule 71.1, this Court may appoint a three-person commission to determine the amount of compensation that Defendants are due to be paid. *See* Fed. R. Civ. P. 71.1(h)(2)(A) ("[T]he court may instead appoint a three-person commission to determine compensation . . . ."). It refuses to exercise that authority.[11] Doing so would unnecessarily waste the parties' time and

---

[11] This Court previously denied Plaintiff's Motion for Appointment of Commission without prejudice. ECF No. 67 (order); ECF No. 51 (motion). It has *sua sponte* reconsidered that motion, and for the reasons stated herein, that motion is **DENIED WITH PREJUDICE**.

money. *See* Fed. R. Civ. P. 71.1(h)(2) advisory committee's note ("Experience with the commission on a nationwide basis . . . has been that the commission is time consuming and expensive."); *see also United States v. Del., Lackawanna & W. R.R. Co.*, 264 F.2d 112, 115 (3d Cir. 1959) ("[A] reference to a commission tends unduly to prolong the proceedings, thereby causing vexation to all concerned and additional expense . . . ."). It would also run counter to the "general rule" of trying the compensation issue to a jury. Fed. R. Civ. P. 71.1 advisory committee's note; *see also id.* ("[I]n the bulk of states a land owner is entitled eventually to a jury trial[.]"); § 73.071, Fla. Stat. (2016) (requiring a twelve-person jury in "eminent domain cases").

But at an even more basic level, property rights have long been recognized as sacred and fundamental. Arthur Lee, a Virginia delegate to the Continental Congress, once declared that "[t]he right of property . . . is the guardian of every other right, and to deprive a people of this, is in fact to deprive them of liberty." James W. Ely Jr., *The Guardian of Every Other Right: A Constitutional History of Property Rights* 26 (2d ed. 1998). And that statement was no accident—the Supreme Court has also

stressed that property rights are just as fundamental others—including, again, the right to liberty. *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990) (acknowledging that there can be no "categorical distinction between a deprivation of liberty and one of property" (citing *Lynch*, 405 U.S. at 552)). This Court tries all kinds of cases before a jury—even the most trivial ones. So, no matter how busy this Court's docket is, it will not deprive Defendants of their property rights without the same opportunity.

## VI

Condemnation is not akin to marriage—it is far from a joyous affair. *See Phelps Dodge Corp. v. Atchison, T. & S. F. Ry. Co.*, 400 F.2d 20, 24 (10th Cir. 1968) ("Condemnation at best is an unhappy event aggravated by . . . the subjective (and often unrealistic) beliefs of [both] parties as to value and damage[s]."). Indeed, it is quite likely that neither party will be enthralled with this case's outcome; Defendants are having their property unilaterally taken from them, while Plaintiffs are being forced to pay more for that property than they feel law requires. But state substantive law governs the compensation measure in eminent-domain condemnation proceedings brought by private parties against private

property owners. *See, e.g.*, *Ga. Power*, 617 F.2d at 1118. Florida's

"full compensation" measure therefore applies here.

Accordingly,

**IT IS ORDERED:**

1.  Plaintiff's Motion for Partial Summary Judgment, ECF

    No. 69, is **DENIED**.

2.  Plaintiff's Motion for Appointment of Commission, ECF

    No. 51, is **DENIED WITH PREJUDICE**.

**SO ORDERED on June 27, 2017.**

**s/Mark E. Walker**
**United States District Judge**
